1

2

3                                                              O

4

5

6

7

8

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11

12  GLORIA AREVALO,              )    Case No.
                                 )    CV 12-7054 JGB (VBKx)
13                               )
                    Plaintiff,   )
14                               )    **ORDER GRANTING HYATT'S**
         v.                      )    **MOTION FOR SUMMARY JUDGMENT**
15                               )
    HYATT CORPORATION,           )
16                               )
                                 )
17                  Defendant.   )
    _____  )
18                               )
                                 )
19

20

21       Before the Court is a Motion for Summary Judgment
    filed by Defendant Hyatt Corporation.  ("Motion," Doc.
22
    No. 21.)  After considering all papers submitted in
23
    support of and in opposition to the Motion and the
24
    arguments presented at the May 6, 2013 hearing, the Court
25
    GRANTS Hyatt's Motion for Summary Judgment.
26

27

28

# I.   BACKGROUND

**A.   Procedural Background**

On July 9, 2013, Plaintiff Gloria Arevalo ("Plaintiff" or "Arevalo") filed her Complaint against Defendant Hyatt Corporation ("Defendant" or "Hyatt") and fictitious defendants in California Superior Court for the County of Los Angeles.  ("Compl.," Not. of Removal, Doc. No. 1, Exh. A.)  Hyatt answered on August 10, 2012. (Not. of Removal, Exh. C.)

Hyatt removed the action to this Court on August 15, 2012.  (Not. of Removal.)  On September 14, 2012, Plaintiff moved to remand the case to state court on the ground that the amount in controversy is less than $75,000.  (Doc. No. 7.)  The Court (Klausner, J.) denied Plaintiff's motion to remand on November 15, 2012.  (Doc. No. 16.)

Hyatt filed its Motion for Summary Judgment on April 5, 2013.  ("Motion," Doc. No 21.)  Hyatt attached the following documents in support of its Motion: Statement of Undisputed Facts ("SUF"); Declaration of David G. Freedman attaching portions of the depositions of Arevalo ("Arevalo Depo.," Exh. 1) and Dr. Shirzad Abrams ("Abrams Depo.," Exh. 2); Declaration of Sara Aguilar ("Aguilar Decl.," Exh. B) attaching Dr. Abrams' reports and related

1  correspondence; and Declaration of Andrew Jones ("Jones
2  Decl.," Exh. C).
3      Arevalo opposed the Motion on April 15, 2013.
4  ("Opp'n," Doc. No. 22.)  In support of her opposition,
5  Arevalo filed her Statement of Genuine Disputes of
6  Material Fact ("SGI"), Written Objections to Evidence
7  Submitted by Defendant ("Pl.'s Objs."), a Declaration of
8  Roderick C. Stoneburner ("Stoneburner Decl."), a
9  Declaration of Gloria Arevalo ("Arevalo Decl.") attaching
10 three exhibits also included elsewhere, a Declaration of
11 Ramin R. Younessi (Doc. No. 23) attaching seven exhibits,
12 including portions of the deposition of Gloria Arevalo
13 ("Arevalo Depo.," Exh. 1), the deposition of Floridalma
14 Pivaral ("Pivaral Depo.," Exh. 2), the deposition of Sara
15 Aguilar ("Aguilar Depo.," Exh. 3), Dr. Abrams' August 2,
16 2011 report ("Aug. 2, 2011 Report," Exh. 4), Arevalo's
17 termination letter ("Term. Letter," Exh. 5), Hyatt
18 Century Plaza Hotel's Union Collective Bargaining
19 Agreement effective from December 1, 2006 to November 30,
20 2009 ("CBA," Exh. 6), and a March 15, 2011 letter from
21 Sara Aguilar to Tamara Hill ("Mar. 15, 2011 Letter," Exh.
22 7).
23     On April 22, 2013, Hyatt replied to the Motion.
24 ("Reply," Doc. No. 25.)  Hyatt also filed objections to
25 Plaintiff's evidence ("Def's Obj.").
26
27
28

**B.  Complaint**

Arevalo filed her Complaint on July 9, 2012. (Compl.)  The Complaint alleges that she was employed as a housekeeper at the Hyatt Regency Century Plaza in Los Angeles, California.  (Compl. ¶¶ 4, 14.)  On February 6, 2010, Plaintiff fell and injured her left knee which prevented her from returning to work.  (Compl. ¶¶ 16, 18.)  Plaintiff alleges that on August 2, 2011 she was cleared to return to work with restrictions.  (Compl. ¶ 25.)  On August 22, 2011, Hyatt terminated Plaintiff because "Hyatt required an employee that can work at 100%."  (Compl. ¶ 26.)

Based on these allegations, Plaintiff states four causes of action.  Claim one is for breach of covenant of good faith and fair dealing.  (Compl. ¶¶ 27-36.)  Claim two alleges disability discrimination in violation of the Fair Employment and Housing Act ("FEHA") during the period of August 2 to August 22, 2011.  (Compl. ¶¶ 37-47.)  Claim three contends that Hyatt failed to provide a reasonable accommodation to Plaintiff from August 2 to August 22, 2011 in violation of FEHA, Cal. Gov. Code § 12940.  (Compl. ¶¶ 48-58.)  Claim four states a claim for retaliation against Plaintiff for her assertion of her rights under FEHA.  (Compl. ¶¶ 59-67.)  Finally, Plaintiff's fifth claim is for wrongful termination in violation of public policy.  (Compl. ¶¶ 68-76.)  As to

Plaintiff's second through fifth causes of action, she further alleges that Hyatt acted with malice, oppression, and willful disregard for Plaintiff's rights.  (Compl. 46, 57, 66, 75.)

## II.  LEGAL STANDARD[1]

A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (citing Anderson, 477 U.S. at 256-57); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Because summary

---

[1] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact. See Avalos v. Baca, No. 05-CV-07602-DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.; Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). "[A] summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also William W.

Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

If the Court is unable to render summary judgment upon an entire case, it shall, if practicable, grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate.  See Fed. R. Civ. P. 56(a); California v. Campbell, 138 F.3d 772, 780-81 (9th Cir. 1998).  Thus, summary adjudication is a mechanism through which the Court deems certain issues established before trial.  Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (internal quotation omitted).  The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III. DISCUSSION**

**A.   Evidentiary Objections**

    Defendant proffered 75 facts in support of its
Motion.  Plaintiff objects to 74 of Defendant's 75 facts,
each on multiple grounds.  For instance, in objection to
Defendant's fact number 34, Plaintiff objects on the
grounds that the evidence is "Hearsay, Fed. R. Evid. 801,
802; Lack of Foundation, Misleading, Vague and Ambiguous,
Fed. R. Evid. 402, 403; Best Evidence Rule, Fed R. Evid.
1002; Lay Opinion, Fed. Rule Evid. 701(b)."  (Pl's Obj.
at 9.)  Moreover, as to nearly every proffered fact,
Plaintiff makes identical objections on the grounds that
the evidence lacks foundation, is misleading, vague,
ambiguous, conclusory, speculative, conjecture, compound,
irrelevant, or argumentative.
    The Court OVERRULES all of Plaintiff's objections as
frivolous.  The Court need not consider "boilerplate
recitations" and "blanket objections [submitted] without
analysis applied to specific items of evidence."  Doe v.
Starbucks, Inc., No. 08-0582, 2009 WL 5183773, at *1
(C.D. Cal. Dec. 18, 2009).  Further, Plaintiff's repeated
"objections to evidence on the ground that it is
irrelevant, speculative, and/or argumentative, or that it
constitutes an improper legal conclusion are all
duplicative of the summary judgment standard itself" and

1  are thus "redundant" and unnecessary to consider here.

2  Burch v. Regents of Univ. of California, 433 F. Supp. 2d

3  1110, 1119 (E.D. Cal. 2006); see Anderson, 477 U.S. at

4  248.  Thus, the Court does not consider any of

5  Plaintiff's objections on the grounds that the evidence

6  lacks foundation, is misleading, vague, ambiguous,

7  conclusory, speculative, conjecture, compound, irrelevant

8  or argumentative.  These objections are challenges to

9  Defendant's characterization of the evidence and are

10  improper on a motion for summary judgment.

11       Once these objections are excluded, Plaintiff's

12  remaining objections are for hearsay, the best evidence

13  rule, and improper lay opinion testimony.  (See e.g.,

14  Pl's Obj. ¶ 34.)  Almost all of Plaintiff's hearsay

15  objections involve portions of Plaintiff's deposition

16  testimony which are corroborated by testimony from the

17  declarant.  (See e.g., Pl's Obj. ¶ 13 (objecting to

18  Arevalo's deposition testimony where she states Dr.

19  Abrams told her that she could not return to work in any

20  capacity between April and December 2010, but ignoring

21  the supporting testimony from Dr. Abrams corroborating

22  this statement).)  Since the declarant's testimony is

23  available and supports the objected-to statement, there

24  is no indicia of unreliability to support exclusion.  In

25  addition, most of these statements are wholly excepted

26  from the rule against hearsay under Fed. R. Evid. 803(4)

27  as statements made for medical diagnosis or treatment or

28

1   excluded from hearsay as statements offered against
2   Plaintiff that she adopted or believed to be true under
3   Fed. R. Evid. 801(d)(2)(B).   Thus, Plaintiff's hearsay
4   objections are OVERRULED.

5       Plaintiff's best evidence rule objections are
6   similarly OVERRULED, as none of the objected-to evidence
7   is introduced to prove the content of a writing and in
8   many cases Defendant nonetheless provided the underlying
9   documentation.  See Fed. R. Evid. 1002. (See e.g., Pl's
10  Obj. ¶ 33 (objecting on best evidence grounds to an email
11  from Tamara Hill to Sara Aguilar, which Defendant
12  attached as exhibit 8 to Aguilar's deposition).)

13      Plaintiff's final objections are for lay opinion
14  testimony under Federal Rule of Evidence 701(b).
15  Plaintiff objects to portions of her own testimony and
16  that of the Assistant Direct of Human Resources, Sara
17  Aguilar, which characterize Plaintiff's injury and her
18  work restrictions.  (See e.g., Pl's Obj. ¶¶ 50, 56.)  Lay
19  testimony in the form of opinions or inferences is proper
20  when "(a) rationally based on the perception of the
21  witness, (b) helpful to a clear understanding of the
22  witness' testimony or the determination of a fact in
23  issue, and (c) not based on scientific, technical, or
24  other specialized knowledge . . . ."  Fed. R. Evid. 701.
25  All of the objected to evidence clearly fits within the
26  definition of proper lay opinion, and Plaintiff's
27  objections on this ground are OVERRULED.   In sum, all of
28

Plaintiff's evidentiary objections are without merit, fail to survive a basic review of the evidentiary rules and are thus OVERRULED.

Defendant makes one evidentiary objection to a declaration submitted in support of Plaintiff's opposition.  Hyatt argues that Roderick C. Stoneburner's conclusion that, "Arevalo could have performed all of the duties of her position without formal modification" on August 8, 2011 is improper expert testimony under Federal Rule of Evidence 702.  (Def's Obj. ¶ 34.)  To qualify as an expert, a declarant must "provide[] adequate foundational information about what training—whether in the classroom or on the job-gave rise to their ability to" come to a stated conclusion.  Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc., 371 F. App'x 719, 720 (9th Cir. 2010).  In his declaration, Stoneburner conclusorily states that he is a "Qualified Vocational Expert" based on his 35 years of experience.  (Stoneburner Decl. ¶ 1.)  He does not describe his field of his experience or its relevant here, nor does he provide any underlying factual support.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (1993) (stating that purported experts cannot rely on "unsupported speculation").  In addition, Stoneburner does not provide any explanation of the methodology he used to arrive at his legal conclusion that Arevalo could have performed her duties without modification on August

11

8, 2011.  Instead, Stoneburner merely recites a list of documents he reviewed.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151 (1999).  Given these deficiencies, the Court finds that Stoneburner's declaration falls short of the reliability and relevancy requirements for the admissibility of expert testimony under Rule 702.  See id. at 152.  The Court SUSTAINS Hyatt's objection to the Stoneburner declaration and the Court will not consider Stoneburner's evidence on this Motion.

To the extent facts submitted by the parties are not recited in this Order, the Court finds them immaterial and does not rely on them in resolving the motions and thus does not resolve any evidentiary disputes regarding their supporting evidence.

**B.   Undisputed Facts**

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the MSJ.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

1

2

3        **1.   The Injury**

4        Gloria Arevalo began working as a room attendant at

5   the Century Plaza Hotel in 1982.  (Arevalo Depo. 8:9-11.)

6   Arevalo continued in that position when Hyatt began

7   operating the hotel in 2005.  (SUF ¶ 1; SGI ¶ 1.)  As a

8   room attendant, Arevalo cleaned guest rooms in the hotel,

9   including cleaning bathtubs, showers, toilets, sinks,

10  walls, mirrors, counters, and floors, changing sheets and

11  towels, making beds, dusting furniture, wiping windows,

12  vacuuming and sweeping.  (SUF ¶ 3; SGI ¶ 3.)  Room

13  attendants work for eight-hour shifts and may take two,

14  ten-minute breaks and one thirty minute lunch break.

15  (SUF ¶ 5; SGI ¶ 5.)  A room attendant stands or walks the

16  entire time she is performing her duties and generally is

17  expected to clean about fourteen rooms per shift.  (SUF

18  ¶¶ 6-8; SGI ¶¶ 6-8; Arevalo Depo. 12:11-15.)

19       On February 6, 2010, Arevalo fell and injured her

20  left knee.  (SUF ¶ 9; SGI ¶ 9.)  Immediately after the

21  injury, Arevalo did not return to work and Hyatt placed

22  her on a leave of absence because her knee was swollen

23  and she had to walk with crutches.  (SUF ¶ 10; SGI ¶ 10;

24  Aguilar Decl. ¶8.)  On April 29, 2010, Dr. Shirzad Abrams

25  performed surgery on Arevalo's left knee.  (SUF ¶ 11; SGI

26  ¶ 11.)  Between April 29, 2010 and December 7, 2010, Dr.

27  Abrams provided Arevalo with work status reports that

28  stated she could not return to work in any capacity.

1  (SUF ¶ 13; SGI ¶ 14; Aguilar Decl., Exhs. 3-4.)  During
2  this time, Hyatt continued to keep Arevalo on leave of
3  absense.  (SUF ¶ 14; SGI ¶ 14.)

4      **2.  Light Duty**

5      On December 7, 2010, Dr. Abrams released Arevalo to
6  return to work with the restrictions of no prolonged
7  standing or walking and limited squatting.  (Aguilar
8  Decl., Exh. 5.)  Dr. Abrams considered the restriction to
9  mean Arevalo should not stand or walk more than 15 to 20
10  minutes in an hour.  (SUF ¶ 16; SGI ¶ 16.)  Hyatt's
11  Assistant Director of Human Resources, Sara Aguilar,
12  reviewed Dr. Abrams work status report and restrictions
13  on December 10, 2010 and determined that she could not
14  perform the duties of a room attendant.  (SUF ¶ 18; SGI ¶
15  18.)  Arevalo agreed that she was not able to perform the
16  duties of a housekeeper at that time.  (Arevalo Depo.
17  22:23-23:5.)  Instead, Hyatt offered Arevalo temporary
18  modified duty on December 30, 2010, also known as "light
19  duty," which she began on January 4, 2011.  (SUF ¶ 19;
20  SGI ¶ 19; Aguilar Decl. ¶ 13, Exh. 6.)  Per Hyatt's
21  policy, light duty is not a permanent position; it is a
22  modified temporary assignment for a maximum period of
23  three months for employees who have work restrictions and
24  require accommodations.[2]  (Aguilar Depo. 30:17-31:2.)

25  _____

26      [2] Plaintiff cites to a collective bargaining
    agreement between Hyatt and UniteHere Local 11 for the
27  proposition that employees were limited to 12-weeks of
    light duty.  (SGI ¶ 19; Younessi Decl., Exh. 6.)
28  However, the cited collective bargaining agreement was
                                        (continued...)

While on light duty, Arevalo's duties consisted of answering phones, folding ice bucket liners and laundry bags, stocking amenities, and checking guest rooms for cleanliness. (Aguilar Decl. ¶ 17; Arevalo Decl. ¶ 20.) Some of Arevalo's duties while on light duty were against her work restrictions, including making some beds, taking out dirty linens, and checking rooms, all of which required her to walk for long periods and caused her knee pain and swelling. (Arevalo Depo. 25:10-27:10.) Arevalo did not tell anyone in Human Resources about her pain. (Arevalo Depo. 27:19-22.)

On February 9, 2011, Dr. Abrams completed another work status report which continued to limit Arevalo to fifteen to twenty minutes of walking or standing every hour and found that it was unreasonable for her to return to her room attendant duties. (Aguilar Decl., Exh. 7; Abrams Depo. 29:10-24.) Based on these restrictions, Aguilar determined on March 15, 2011 that Arevalo could not return to her position as a room attendant when her light duty expired. (Aguilar Decl. ¶ 18.)

---

[2](...continued) only in effect from December 1, 2006 to November 30, 2009, which is not the relevant time period at issue here as Plaintiff was not injured until February 2010. (Younessi Decl., Exh. 6.) Moreover, the provided provisions of the collective bargaining agreement do not make any mention of light or modified duty. The Court therefore does not consider Plaintiff's arguments or evidence regarding the collective bargaining agreement.

1

### 3.  Leave of Absence

2      On March 15, 2011, Aguilar, Arevalo and Houskeeping

3   Director, Andrew Jones, met to discuss how Hyatt could

4   accommodate Arevalo's work restrictions.  (SUF ¶ 37; SGI

5   ¶ 37.)  At this meeting, Aguilar notified Arevalo that

6   her light duty assignment had expired.[3]  (Aguilar Decl. ¶

7   18.)  If it were not for the expiration of her light duty

8   period, Arevalo and Aguilar both believed that Arevalo

9   would have been able to continue doing the modified

10  assignments.  (Arevalo Decl ¶ 23; Aguilar Depo. 29:23-

11  29:1.)  Aguilar also told Arevalo that she could not

12  return to her position as a room attendant because of her

13  work restrictions.  (SUF ¶ 38; SGI ¶ 38.)  Finally,

14  Aguilar and Arevalo reviewed a list of job openings at

15  the hotel, but Plaintiff did not see any open jobs for

16  which she was qualified.[4]  (SUF ¶¶ 39-42; SGI ¶¶ 39-42.)

17

18

_____

19      [3] Plaintiff notes that on March 15, 2012, Arevalo had
    only used ten of the allotted twelve weeks of her light
20  duty assignment.  (SGI ¶ 20.)
        Plaintiff insinuates that Aguilar "falsely testified,
21  under oath," that Arevalo exhausted her allotted modified
    duty.  (SGI ¶ 21.)  Plaintiff further implies that
22  Aguilar committed perjury in her deposition and
    declaration.  (SGI ¶¶ 27-28.)  The Court does not take
23  lightly Plaintiff's accusations of perjury, and cautions
    Plaintiff that she should be wary of making such serious
    accusations without evidentiary or legal support.  See
24  United States v. Dunnigan, 507 U.S. 87, 94 (1993) (A
    witness commits perjury if she "gives false testimony
25  concerning a material matter with the willful intent to
    provide false testimony, rather than as a result of
26  confusion, mistake, or faulty memory.").

27      [4] The parties agree that Arevalo understands very
    little English, and therefore Arevalo is not qualified
28  for positions which require English fluency.  (SUF ¶¶ 40-
    41; SGI ¶¶ 40-41.)

1   Aguilar also showed Arevalo how to check for job openings
2   on the hotels website.  (SUF ¶ 46; SGI ¶ 46.)   Aguilar
3   placed Arevalo back on leave of absence, as she had four
4   months of industrial injury leave remaining.  (Aguilar
5   Decl. ¶ 21.)   Aguilar notified Arevalo that if she
6   remained unable to perform the duties of a room attendant
7   or another available position at the end of her four
8   months of leave, she would be terminated.  (Aguilar Decl.
9   ¶ 21.)

10       During Arevalo's medical leave, she continued to see
11  Dr. Abrams who provided reports to Aguilar on Arevalo's
12  work restrictions.  (Aguilar Decl. ¶ 22.)   Dr. Abrams'
13  March 29, April 26, May 31, and July 5, 2011 reports all
14  stated that Arevalo was "unable to return to work" in any
15  capacity.  (Aguilar Decl., Exh. 9.)

16       **4.  Termination**

17       On August 2, 2011, Dr. Abrams provided an updated
18  work status report which stated that Arevalo could return
19  to work with the following restrictions, "no kneeling on
20  left knee, no running, no jumping."  (Aug. 2, 2011
21  Report, Aguilar Decl., Exh. 10.)   Arevalo further
22  understood that her restrictions as of August 2, 2011
23  were that she could not climb, bend her knees, jump run,
24  kneel, or walk for long periods of time.  (Arevalo Depo.
25  45:22-46:5.)   She believed that she could perform her job
26  as a room attendant with these restrictions.  (Arevalo
27  Depo. 47:13-16.)

28

Aguilar received Dr. Abrams' August 2, 2011 report and determined that Arevalo could not return to work as a room attendant. (Agular Decl. ¶ 24.) Aguilar and Arevalo met on August 8, 2011 and Aguilar informed her that her work restrictions prevented her from returning to work as a room attendant. (Aguilar Decl. ¶ 27.) They reviewed a list of vacant positions at the hotel, but Arevalo did not qualify for any available jobs.[5] (SUF ¶ 59; SGI ¶ 59.) Aguilar notified Arevalo that there were no jobs at the hotel that she was able to perform with her restrictions. (SUF ¶ 58; SGI ¶ 58.) Arevalo also recalls asking Aguilar to give her an opportunity and Aguilar responded by saying that Hyatt requires "100 percent of my body to be able to work" as a room attendant. (Arevalo Depo. 49:21-25.) On August 8, 2011, Hyatt terminated Arevalo. (Younessi Decl., Exh. 5.)

### 5. Additional Medical Care

At the time of her termination, Arevalo was required to use a cane to walk. (SUF ¶ 62; SGI ¶ 62.) From the date of the accident in February 2010 until at least June 2012, if Arevalo did not use a cane she would lose her balance and fall because her knee was weak and would give out underneath her. (SUF ¶¶ 63-65; SGI ¶¶ 63-65.)

On August 30, 2011, Dr. Abrams' opinion was that Arevalo was "unable to perform any activities that

---

[5] Plaintiff states that Aguilar only provided Arevalo with a list of hotel positions "in housekeeping," not all open positions at the hotel for which she may have been qualified. (SGI ¶¶ 57-59.)

1  involve prolonged standing, prolonged walking, climbing,
2  kneeling, or squatting."  (Abrams Depo. 36:21-37:5.)
3  Abrams also opined that on a long term basis, if Arevalo
4  continued to keep doing physical activities such as
5  prolonged standing and walking, she would experience
6  increased pain and swelling.  (Abrams Depo. 38:5-12.)  In
7  September 2011, Arevalo's knee continued to cause her
8  pain and would get swollen after fifteen minutes of
9  walking.  (Arevalo Depo. 53:5-24.)  Since Arevalo left
10 Hyatt, at least three doctors have told her that she
11 could not perform work which required her to bend her
12 knee, walk for extended periods, jump, or lift more than
13 twenty or twenty-five pounds.  (Arevalo Depo. 63:1-16.)
14 Arevalo received physical therapy on her knee from
15 approximately January 2012 to January 2013 during which
16 time she had to refrain from bending her knee, running,
17 walking or standing for long periods.  (Arevalo Depo
18 70:9-71:8.)

19     Before her termination in July 2011, Arevalo also
20 began seeing a doctor for back and neck pain resulting
21 from her February 2010 fall.  (Arevalo Depo. 50:20-22.)
22 For most of 2012, Arevalo could not lift her left hand or
23 arm, which prevented her from doing housework, changing
24 her clothes, or bathing herself.  (SUF ¶¶ 72-73; SGI ¶¶
25 72-73.)

26     Arevalo understands that she needs to have her knee
27 replaced because it is very damaged.  (Arevalo Depo.
28 76:7-23.)

1

2   **C.   FEHA Claims: Qualified Individual**

3

4        To establish Plaintiff's second and third claims for

5   violations of FEHA, Plaintiff must introduce evidence

6   demonstrating that she is a "qualified individual" within

7   the meaning of the statute.  <u>Green v. State</u>, 42 Cal. 4th

8   254, 262 (2007); <u>Nadaf-Rahrov v. Neiman Marcus Grp.,</u>

9   <u>Inc.</u>, 166 Cal. App. 4th 952, 971 (2008).  In order to

10  establish she is a "qualified individual," Plaintiff

11  "bears the burden of proving [she is] an employee . . .

12  able to perform the essential functions of a job with or

13  without reasonable accommodation."  <u>Nadaf-Rahrov</u>, 166

14  Cal. App. 4th at 976 (citing <u>Green</u>, 42 Cal. 4th at 257).

15       Hyatt argues that Plaintiff was not a qualified

16  individual because she could not perform the essential

17  functions of a room attendant with or without an

18  accommodation during the period of August 2, 2011 to

19  August 22, 2011.[6]  (Motion at 10.)  California Government

20  Code Section 12926(f) defines "essential functions" as

21  "the fundamental job duties of the employment position

22  the individual with a disability holds or desires."  Cal.

23  Gov. Code § 12926(f).  In determining which functions are

24

25  _____

26       [6]As defined in her Complaint, Plaintiff's second and
    third causes of action for disability discrimination and
    failure to provide a reasonable accommodation under FEHA
27  are limited to the time period between August 2 and
    August 22, 2011.  (Compl. ¶¶ 41, 52.)  The Court
28  therefore limits its review of Hyatt's actions to this
    time period.

essential, relevant evidence includes, but is not limited to, the employer's judgment as to which functions are essential, written job descriptions prepared before advertising or interviewing applicants for the job, the amount of time spent on the job performing the function, the consequences of not requiring the incumbent to perform the function, and the past and current work experience of incumbents on the job. Cal. Gov't Code § 12926(f)(2); 29 C.F.R. § 1630.2(n). There is substantial evidence to show that the essential functions of a room attendant are to clean bathtubs, showers, toilets, sinks, walls, mirrors, counters, and floors, remove dirty linens, change sheets and towels, make beds, dust furniture, wipe windows, vacuum and sweep. (Jones Decl. ¶ 7; Aguilar Decl. ¶ 5; Arevalo Depo. 14:2-21; Arevalo Decl. ¶ 10.)

Plaintiff argues that the duties of room attendants are not uniform and can vary based on the type of room assigned to the employee. (Opp'n at 11.) However, Plaintiff provides no contrary evidence to demonstrate which duties of a room attendant are essential and which are non-essential. Plaintiff's conclusory statement that the duties vary is not sufficient to controvert Defendant's evidence of the position's essential duties. Moreover, evidence of whether a particular function is essential includes "[t]he employer's judgment as to which functions are essential" and "the past and current work experience of incumbents on the job." Cal. Gov. Code §

1  12929(f)(2); 29 C.F.R. § 1630.2(n).  The Court therefore
2  finds that multiple declarations from Hyatt employees
3  delineating the essential duties of a room attendant and
4  Arevalo's deposition and declaration testimony
5  acknowledging her completion of these duties during her
6  twenty-nine-year experience as a room attendant are
7  sufficient evidence to find that the duties listed above
8  are essential to the room attendant position.
9      **1.  Without a Reasonable Accommodation**
10     The Court next turns to whether Arevalo could perform
11 these essential duties without a reasonable
12 accommodation.  Plaintiff's undisputed physical
13 limitations are instructive here.  There is undisputed
14 evidence to show that during August 2011 Arevalo required
15 the use of a cane to walk at all times, and without such
16 support her knee could give out causing her to fall.
17 (SUF ¶¶ 63-65; SGI ¶¶ 63-65.)  Moreover, undisputed
18 evidence demonstrates that to perform the essential tasks
19 of a room attendant, an employee must be able to engage
20 in prolonged walking and standing.  (SUF ¶¶ 6-8; SGI ¶¶
21 6-8.)  The Court finds as a matter of law that Arevalo,
22 who required the use of a cane at all times, could not
23 have performed the essential duties of a room attendant,
24 most of which required consistent unaided walking or
25 standing, such as cleaning bathtubs, changing sheets, and
26 sweeping.  See Perez v. Linear Tech. Corp., 4 F. App'x
27 527, 528 (9th Cir. 2001) (holding that plaintiff was not
28 a "qualified individual" where she could not peform an

22

1   essential function of her job to "visually inspect
2   specific written directions" where "[e]pisodes of blurry
3   vision . . .periodically interfered with her ability to
4   read those instructions and a series of workplace errors
5   ensued"); Hastings v. Dep't of Corr., 110 Cal. App. 4th
6   963, 971, 2 Cal. Rptr. 3d 329, 334 (2003) (finding
7   plaintiff was not a qualified individual where his knee
8   injuries made him unable to walk more than a few yards
9   without a cane and made it impossible for him to perform
10  the essential functions a correctional officer including
11  walking and ascending or descending stairs while carrying
12  various items).

13      Plaintiff's primary contention is that based on her
14  own deposition testimony, she was able to perform the
15  essential functions of her job in August 2011.  Arevalo
16  testified that she would have been able to do her job as
17  a housekeeper while she was using a cane.  (Arevalo Depo.
18  60:1-13.)  When asked how this would be possible, Arevalo
19  responded that "I could because I didn't have to walk
20  around like - you know, running."  (Arevalo Depo. 60:7-
21  8.)  However, the undisputed facts show that the
22  essential duties of Arevalo's position required
23  substantial walking, and that if she attempted to walk
24  she would lose her balance and fall.  Although "specific
25  testimony by a single declarant can create a triable
26  issue of fact . . . [the Court] need not find a genuine
27  issue of fact if, in its determination, the particular
28  declaration was uncorroborated and self-serving." F.T.C.

1  v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010)

2  (quotation omitted).  The Court finds that Plaintiff's

3  testimony that she could perform the essential duties of

4  her position with a cane is a "bald, uncorroborated, and

5  conclusory assertion[] rather than evidence," and the

6  Court finds that it does not create a triable issue of

7  material fact that requires consideration by the jury.

8  Id.; see also Rivera v. Nat'l R.R. Passenger Corp., 331

9  F.3d 1074, 1079 amended, 340 F.3d 767 (9th Cir. 2003).

10  Without specific facts to support her conclusion,

11  Plaintiff's bald assertion of an "ultimate fact" is

12  insufficient to defeat a motion for summary judgment.

13  Weston v. FedEx Office & Print Servs., Inc., 707 F. Supp.

14  2d 1074, 1076 (S.D. Cal. 2010) (citing Schneider v. TRW,

15  Inc., 938 F.2d 986, 990-91 (9th Cir. 1991)).

16      Plaintiff also argues that Hyatt cannot argue that

17  Arevalo could not perform the essential functions of a

18  room attendant because Defendant never gave her an

19  opportunity to show she could perform those functions.

20  (Opp'n at 10-11.)  However, Plaintiff has the burden to

21  prove that she could perform the essential functions of

22  the position.  See Nadaf-Rahrov, 166 Cal. App. 4th at

23  976.  Defendant's failure to offer Plaintiff an

24  opportunity to work as a room attendant does not

25  demonstrate that Plaintiff was qualified to perform the

26  essential function of that position.  By contrast, the

27  medical evidence supplied by Plaintiff's doctor in this

28  case supports the conclusion that Arevalo was not able to

perform the essential functions of a room attendant in
August 2011.  Dr. Abrams testified that in August 2011,
Arevalo was unable to perform any activity that involved
prolonged standing, walking, climbing, kneeling or
squatting.  (Abrams Depo. 36:21-25.)  It is undisputed
that the essential duties of the room attendant position
require prolonged standing and walking for the majority
of an eight-hour shift.  Thus, Plaintiff was not a
qualified individual under FEHA in August 2011.

     Plaintiff final argument is that the sole basis of
determining whether Plaintiff could perform the essential
functions of a room attendant should be Dr. Abrams'
August 2, 2011 work status report which only limited
Plaintiff from kneeling, running, and jumping.  (Opp'n at
12.)  While Plaintiff's August 2011 work restrictions are
a relevant starting point, they are not controlling on
the issue of whether Plaintiff was able to perform room
attendant duties.  Arevalo's testimony regarding her own
limitations demonstrates that in addition to the
restrictions in the work status report, Arevalo also
could not put weight on her knee, as it could cause it to
give out, to swell, or to be painful.  Moreover, Arevalo
testified that in August 2011 Dr. Abrams provided her
with additional restrictions outside of the work status
report including refraining from bending her knees and
walking for long periods of time.  (Arevalo Depo. 45:22-
46:5.)  Finally, focusing on Dr. Abrams' single August
2011 status report in isolation ignores the totality of

1  evidence before and after this date in which Arevalo was
2  unable to return to work in any capacity.  (Aguilar
3  Decl., Exh. 9; Arevalo Depo. 69:11-19.)  Viewed as a
4  whole, these physical limitations prevented Arevalo from
5  performing the standing and walking undisputably
6  necessary to fulfill the obligations of a room attendant.
7  The Court therefore finds the undisputed evidence cannot
8  support a finding that Arevalo was capable of performing
9  the essential functions of a room attendant without an
10 accommodation in August 2011.

11      **2.   With A Reasonable Accommodation**

12      Plaintiff may also satisfy her burden of establishing
13 she is a "qualified individual" by presenting evidence to
14 show she could perform the essential duties of a position
15 with a reasonable accommodation.  <u>Green</u>, 42 Cal.4th at
16 262.  Under FEHA, "reasonable accommodation" means "a
17 modification or adjustment to the workplace that enables
18 the employee to perform the essential functions of the
19 job held or desired."  <u>Cuiellette v. City of Los Angeles</u>,
20 194 Cal. App. 4th 757, 766 (2011) (citation omitted).  A
21 "reasonable accommodation" includes "[j]ob restructuring,
22 part-time or modified work schedules, reassignment to a
23 vacant position, acquisition or modification of equipment
24 or devices, adjustment or modifications of examinations,
25 training materials or policies, the provision of
26 qualified readers or interpreters, and other similar
27 accommodations for individuals with disabilities."  Cal.
28 Gov. Code § 12926(n)(2); Cal. Code Regs. tit. 2, §

7293.9(a)(2).  Plaintiff argues that Hyatt had a duty to
accommodate Plaintiff in one of two ways: by reassigning
her to a vacant position or by extending her leave of
absence.

   **a.  Reassignment**

 "When an employee seeks accommodation by being
reassigned to a vacant position in the company, the
employee satisfies the 'qualified individual with a
disability' requirement by showing he or she can perform
the essential functions of the vacant position with or
without accommodation." <u>Nadaf-Rahrov</u>, 166 Cal. App. 4th
at 963.  "A reassignment, however, is not required if
there is no vacant position for which the employee is
qualified." <u>Cuiellette</u>, 194 Cal. App. 4th at 766-67
(internal citation and quotation omitted).  An employer
is required "to reassign a disabled employee if an
already funded, vacant position at the same level
exists." <u>Id.</u>  An employer can prevail on summary
judgment if it establishes through undisputed facts that
"there simply was no vacant position within the
employer's organization for which the disabled employee
was qualified and which the disabled employee was capable
of performing with or without accommodation." <u>Jensen v.</u>
<u>Wells Fargo Bank</u>, 85 Cal.App.4th 245, 263 (2000).

 Plaintiff does not identify any specific position for
which she was qualified.  Instead, she argues that Hyatt
failed to do a thorough investigation into vacant
positions in order to determine if Arevalo was qualified.

(Opp'n at 7.)  Hyatt has met its initial burden of demonstrating that reassignment was not required because there was no vacant position for which Arevalo was qualified.  Aguilar reviewed all vacant positions with Arevalo in March 2011, but Arevalo admits there were no open positions for which she was qualified.  (SUF ¶¶ 39-42; SGI ¶¶ 39-42.)  Aguilar also showed Arevalo how to check for open positions on Hyatt's website and instructed her to continue to look for positions while she was on leave.  (SUF ¶ 46; SGI ¶ 46.)  Arevalo admits she did not do so.  (Arevalo Depo. 39:4-23.)  Aguilar and Arevalo again reviewed vacant positions prior to her termination in August 2011.  (SUF ¶ 59; SGI ¶ 59.)  The sole evidence Plaintiff offers is that in August 2011 Aguilar provided Arevalo with only a list of hotel positions "in housekeeping," not a list of all vacant positions at the hotel.  (SGI ¶¶ 57-59.)  However, the uncontroverted evidence demonstrates that Plaintiff had access to all open positions via Hyatt's website and that Aguilar reviewed all "the available positions at the hotel" and determined that Arevalo was not qualified for any based on her work restrictions, lack of prior experience, lack of educational background, and lack of fluency in English.  (Aguilar Decl. ¶ 26.)  Plaintiff has not presented any evidence to show that there is or was any vacant position at the hotel for which she was qualified.  Plaintiff cannot defeat summary judgment simply by raising a question, without any evidence, as to

1  the thoroughness of Hyatt's investigation and thus has
2  not carried her burden to show that a triable issue of
3  material facts exists.  The Court finds that Hyatt has
4  "established through undisputed facts that . . . there
5  simply was no vacant position within the employer's
6  organization for which the disabled employee was
7  qualified and which the disabled employee was capable of
8  performing with or without accommodation[.]"  <u>Jensen</u>, 85
9  Cal. App. 4th at 263.  <u>See</u> <u>Grantz v. State Farm Mut.</u>
10 <u>Auto. Ins. Co.</u>, 420 F. App'x 692, 694 (9th Cir. 2011)
11 ("Grantz has not proffered evidence that a vacant field
12 position existed between October 2007 and his termination
13 in July 2008. His claim that State Farm did not
14 reasonably accommodate his disability by transferring him
15 to a field position during this period therefore
16 fails.").  Plaintiff has failed to demonstrate a triable
17 issue of fact as to whether she was qualified to perform
18 the essential functions of a vacant position at the
19 hotel.
20              **b.  Extension of Leave**
21      Plaintiff's primary argument is that Hyatt was
22 obligated to accommodate Arevalo by extending her leave.
23 (Opp'n at 8.)  "[W]here a leave of absence would
24 reasonably accommodate an employee's disability and
25 permit h[er], upon h[er] return, to perform the essential
26 functions of the job, that employee is otherwise
27 qualified . . . ."  <u>Humphrey v. Mem'l Hospitals Ass'n</u>,
28 239 F.3d 1128, 1135-36 (9th Cir. 2001).

As of August 2011, Arevalo had been on medical leave
or modified light duty for a total of eighteen months.
For over fifteen of these months, Arevalo was on a leave
of absence.  An additional leave of absence would only be
required if "it is likely that following the leave the
employee would be able to perform his or her duties."
Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215
(1999).  Hyatt had no indication from Arevalo or Dr.
Abrams when or if Plaintiff would be able to return to
her housekeeping duties.  In her termination meeting,
Plaintiff did not provide any information which could
reasonably have led Hyatt to believe her condition was
improving.  Plaintiff testified that from February 2010
until January 2013, she was not able to bend at the
knees, run, or walk or stand for long periods of time.
(Arevalo Depo. 71:22-72:3.)  Plaintiff also testified
that she used a cane from the time of her fall through
June 2012.  (SUF ¶¶ 63-65; SGI ¶¶ 63-65.)  The evidence
does not show that Plaintiff's condition was improving
such that an additional leave would have made it likely
that Plaintiff could return to work. "Reasonable
accommodation does not require the employer to wait
indefinitely for an employee's medical condition to be
corrected."  Hanson, 74 Cal. App. 4th at 226-27.

Moreover, "[a]n employer is not required to offer an
accommodation that is likely to be futile because, even
with accommodation, the employee could not safely and
efficiently perform the essential functions of the job.

1  Thus an employer would not be required to provide
2  repeated leaves of absence (or perhaps even a single
3  leave of absence) for an [] employee with a poor
4  prognosis for recovery." Hanson, 74 Cal. App. 4th at 226
5  (internal quotation and citation omitted).  Here, the
6  undisputed evidence demonstrates that an addition leave
7  of absence would have been futile.  Plaintiff continued
8  to use a cane to support her weight through June 2012.
9  (SUF ¶¶ 63-65; SGI ¶¶ 63-65.)  Dr. Abrams' August 30,
10 2011 report also stated that as of that date Arevalo was
11 unable to walk or stand for long periods.  (Abrams Depo.
12 36:21-37:5.)  Three additional doctors reiterated this
13 restriction subsequent to Arevalo's termination.
14 (Arevalo Depo. 63:1-16.)  In fact, the undisputed
15 evidence shows that Arevalo's condition worsened after
16 her termination, such that a leave would not have made it
17 likely Plaintiff would have been able to return to work.
18 Beginning in July 2011, Arevalo began to experience back
19 and neck pain resulting in her inability to lift her left
20 hand or arm for most of 2012.  (SUF ¶¶ 72-73; SGI ¶¶ 72-
21 73.)  As a matter of law, the undisputed evidence cannot
22 support a finding that Arevalo would have been able to
23 perform the essential functions of a room attendant with
24 the accommodation of an additional leave of absence
25 beyond the fifteen months already provided.  See Dep't of
26 Fair Employment & Hous. v. Lucent Technologies, Inc., 642
27 F.3d 728, 744 (9th Cir. 2011) ("[Defendant] repeatedly
28 considered whether [Plaintiff] could perform the tasks of

an installer given his physical restrictions or
alternatively be placed in another position, but it
determined that he could not.  Lucent was not required to
do more under California law, such as modifying the
installer position or extending the disability period
indefinitely.").  As such, the Court finds that Plaintiff
was not a "qualified individual" for the purposes of the
FEHA.

**D.    Claim Two: FEHA Disability Discrimination**

        Plaintiff brings her second claim for disability
discrimination under Section 12940(a) of FEHA.  To
prevail on summary judgment for a disability
discrimination claim under FEHA, an employer is required
to show either that (1) plaintiff could not establish one
of the elements of the FEHA claim or (2) there was a
legitimate, nondiscriminatory reason for its decision to
terminate plaintiff's employment.  <u>Dep't of Fair
Employment & Hous. v. Lucent Technologies, Inc.</u>, 642 F.3d
728, 745 (9th Cir. 2011).  Hyatt prevails on both accounts.
        To establish a prima facie case for discrimination
under the FEHA on grounds of physical disability,
Plaintiff has to present evidence showing (1) she
suffered from a physical disability within the meaning of
the FEHA, (2) she was qualified to perform the essential
functions of her position, and (3) she suffered an
adverse employment action because of the physical

32

disability.   <u>Scotch v. Art Inst. of California-Orange</u>
<u>Cnty., Inc.</u>, 173 Cal. App. 4th 986, 1006 (2009).   The
parties agree that Plaintiff suffered from a physical
disability due to her knee injury and that she suffered
an adverse employment action, namely termination, as a
result of her disability.   However, as described above,
the undisputed facts demonstrate that no reasonable juror
could find she was a qualified to perform the essential
functions of her position with or without accommodation.
As such, Plaintiff has failed to establish one of the
necessary elements for her FEHA claim and the Court
therefore GRANTS summary judgment as to Plaintiff's
second claim for disability discrimination under FEHA.

Even if Plaintiff could prove that she is a
"qualified individual" for the purposes of FEHA,
Defendant has provided a legitimate, nondiscriminatory
reason for her discharge.   When Defendant's motion for
summary judgment relies on a showing of nondiscriminatory
reasons for the discharge,

> "the employer satisfies its burden as moving
> party if it presents evidence of such
> nondiscriminatory reasons that would permit a
> trier of fact to find, more likely than not,
> that they were the basis for the termination. To
> defeat the motion, the employee then must adduce
> or point to evidence raising a triable issue,
> that would permit a trier of fact to find by a
> preponderance that intentional discrimination
> occurred."

<u>Scotch</u>, 173 Cal. App. 4th 986 at 1005 (internal citation
and quotation omitted).

Hyatt has presented evidence of a nondiscriminatory
reason for terminating Plaintiff's employment that would

1  permit a trier of fact to find it more likely that the
2  proffered reason was the basis for her discharge.
3  Subsection 12940(a)(1) of FEHA states that an employer
4  has not engaged in disability discrimination if it
5  discharges an employee with a physical disability "where
6  the employee, because of his or her physical or mental
7  disability, is unable to perform his or her essential
8  duties even with reasonable accommodations, or cannot
9  perform those duties in a manner that would not endanger
10 his or her health or safety or the health or safety of
11 others even with reasonable accommodations."  Cal. Gov.
12 Code § 12940(a)(1).  As described above, Plaintiff is
13 unable to perform her essential duties with or without an
14 accommodation.  Hyatt has introduced substantial evidence
15 to show that it is more likely than not that Arevalo's
16 inability to perform her duties was the reason Hyatt
17 discharged her, (see Aguilar Decl. ¶¶ 25, 25), and has
18 thus identified a legitimate non-discriminatory reason
19 for its actions.
20     The burden shifts to Plaintiff to present evidence
21 that "the employer's stated reason is either false or
22 pretextual, or evidence that the employer acted with
23 discriminatory animus, or evidence of each which would
24 permit a reasonable trier of fact to conclude the
25 employer intentionally discriminated."  Scotch, 173 Cal.
26 App. 4th at 1007 (quotation omitted).   "If a plaintiff
27 uses circumstantial evidence to satisfy this burden, such
28 evidence must be specific and substantial."  Lucent

1   <u>Technologies</u>, 642 F.3d 728 at 746 (quotation omitted).
2   Plaintiff argues that Hyatt acted with a discriminatory
3   motive because it terminated Plaintiff as part of a
4   "strict adherence to a finite disability leave policy"
5   which mandated termination after fifteen months of leave.
6   (Opp'n at 15.)  Plaintiff does not provide specific or
7   substantial evidence of the alleged fixed and rigid leave
8   policy.  Plaintiff points to the collective bargaining
9   agreement which, as discussed above, was not in force at
10  the time of Plaintiff's termination.[7]  In addition,
11  Plaintiff was terminated after almost sixteen months, not
12  fifteen, which contradicts Plaintiff's argument that
13  Hyatt adhered to a strict fifteen month leave policy.
14  Even if Hyatt did have a policy which entitled employees
15  to a maximum of 15 months of injury leave, such a policy
16  is not per se discrimination, as Plaintiff argues.  <u>See</u>
17  <u>Eshaya v. Boeing Co.</u>, 118 F. App'x 159, 161 (9th Cir.
18  2004) (finding that automatic termination resulting from
19  the expiration of medical leave in complaince with the
20  collective bargaining agreement was not necessarily an
21  adverse employment action); <u>cf.</u> <u>Spaziano v. Lucky Stores,</u>
22  <u>Inc.</u>, 69 Cal. App. 4th 106, 109 (1999) (holding that a
23  collective bargaining agreement that gives a one-year
24  leave of absence to employees who are disabled by

25  _____

26      [7]The Court notes that it is possible that the same or
    a similar collective bargaining agreement was in effect
27  at the time of Plaintiff's termination.  However, the
    Court cannot assume, and Plaintiff has provided no
28  evidence to show, what the terms of the agreement were
    during the relevant time period.

occupational injury and a six-month leave of absence to
employees who are disabled by non-occupational was not
per se discriminatory).  The mere fact that Plaintiff may
have a fifteen-month leave policy is insufficient to
raise an inference that discriminatory animus prompted
Plaintiff's discharge, especially where the undisputed
evidence demonstrate Hyatt made an individual assessment
of Plaintiff's ability to work at the time of
termination.  See King v. United Parcel Serv., Inc., 152
Cal. App. 4th 426, 436 (2007).  "Rather, the employee
must demonstrate such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action
that a reasonable factfinder could rationally find them
unworthy of credence." Lucent Technologies, Inc., 642
F.3d 728 at 746.  Plaintiff has failed to do so.

      Similarly, Plaintiff argues that Hyatt had a "policy
requiring employees' bodies be 100% able to work, and
that Plaintiff was terminated because 9% of her body was
not working." (Opp'n at 11.)  Plaintiff fails to point
to specific and substantial information substantiating
the existence of this policy.  Moreover, any evidence of
a requirement that employees be 100 percent able to work
does not establish pretext because the undisputed facts
demonstrate that Hyatt continually individually assessed
Arevalo's ability to perform the essential functions of
her position by reviewing her work status reports, the
requirements of the room attendant position, and

potential reassignment to another position.   See Lucent
Technologies, 642 F.3d 728 at 747 (rejecting plaintiffs'
argument that defendant "has a one-hundred percent healed
policy and that this raises a genuine issue of material
fact as to pretext . . . because here the undisputed
facts demonstrate that Lucent attempted to accommodate
him by continually assessing him on an individual
basis").

    For the aforementioned reasons, Plaintiff has failed
to raise a genuine issue of material fact as to pretext
or discriminatory animus to overcome Hyatt's showing that
it terminated Plaintiff for a non-discriminatory,
legitimate reason.   Accordingly, the Court GRANTS summary
judgment on Plaintiff's second claim for relief on this
basis.

**E.   Claim Three: FEHA Reasonable Accommodation**

    In her third cause of action, Plaintiff alleges Hyatt
breached its duty to provide her a reasonable
accommodation in violation of Section 12940(m) of FEHA.
The elements of a failure to accommodate claim are (1)
the plaintiff has a disability under the FEHA, (2) the
plaintiff is qualified to perform the essential functions
of the position, and (3) the employer failed to
reasonably accommodate the plaintiff's disability.
Scotch, 173 Cal. App. 4th at 1009-10.
    As discussed above, Plaintiff has failed to raise a

1  triable issue of fact as to whether she could perform a
2  room attendant's essential functions.  Hyatt has carried
3  its burden of demonstrating that there is an absence of
4  evidence to support as essential element of Plaintiff's
5  reasonable accommodation claims, and the Court GRANTS
6  summary judgment as to Plaintiff's third claim for
7  relief.

8

9  **F.   Claim Four: FEHA Retaliation**

10

11        Under Sectin 12940(h), an employer may not
12  discriminate against any person because "the person has
13  opposed any practices forbidden under this part or
14  because the person has filed a complaint, testified, or
15  assisted in any proceeding under this part."  Cal. Gov.
16  Code § 12940(h).  "To establish a prima facie case of
17  retaliation under the FEHA, a plaintiff must show (1) he
18  or she engaged in a protected activity, (2) the employer
19  subjected the employee to an adverse employment action,
20  and (3) a causal link existed between the protected
21  activity and the employer's action." <u>Scotch</u>, 173 Cal.
22  App. 4th at 1020 (internal quotation omitted).
23        Plaintiff provides no evidence to support any of the
24  elements of her claim for retaliation.  She conclusorily
25  states that at the time of her termination, she "was
26  engaged in the protected activity of seeking return to
27  her former position and returning from disability leave."
28  (Opp'n at 17.)  Assuming this is a protected activity,

1    Plaintiff has produced no evidence to establish the third
2    element of the claim – that there is a causal link
3    between her termination and her attempt to return from
4    medical leave.   "To show the requisite causal link, the
5    plaintiff must present evidence sufficient to raise the
6    inference that her protected activity was the likely
7    reason for the adverse action." <u>Washington v. California</u>
8    <u>City Correction Ctr.</u>, 871 F. Supp. 2d 1010, 1028 (E.D.
9    Cal. 2012) (quotation omitted).  Defendant has
10   sufficiently shown that Plaintiff does not have enough
11   evidence of a causal link between her alleged protected
12   activity and her subsequent termination to carry her
13   ultimate burden of persuasion at trial.  Accordingly, the
14   Court GRANTS summary judgment on the fourth claim for
15   retaliation.

16

17   **G.    Claim Five: Wrongful Termination in Violation of**
18   **       Public Policy**

19

20        The fifth claim for relief alleges Hyatt terminated
21   Arevalo in violation of public policy.  In California, an
22   "employer may not discharge an at will employee for a
23   reason that violates fundamental public policy. This
24   exception is enforced through tort law by permitting the
25   discharged employee to assert against the employer a
26   cause of action for wrongful discharge in violation of
27   fundamental public policy." <u>Stevenson v. Superior Court</u>,
28   16 Cal.4th 880, 887 (1997).   FEHA's prohibition against

disability discrimination may form the basis of a
wrongful discharge in violation of public policy claim.
See City of Moorpark v. Superior Court, 18 Cal.4th 1143,
1159-61 (1998).   However, where a plaintiff's FEHA claim
fails, a claim of wrongful discharge in violation of the
public policy expressed in FEHA also fails.   De Horney v.
Bank of America Nat'l Trust & Sav. Assoc., 879 F.2d 459,
465 (9th Cir. 1989);   Esberg v. Union Oil Co., 28 Cal.4th
262, 272 (2002).   Here, because Plaintiff's FEHA
discrimination claim has failed, her claim for wrongful
discharge in violation of public policy also necessarily
fails.   Defendant is entitled to summary judgment on this
claim.   See Holtzclaw v. Certainteed Corp., 795 F. Supp.
2d 996, 1021 (E.D. Cal. 2011).

**H.   Claim One: Breach of an Covenant of Good Faith and
Fair Dealing**

It appears from Plaintiff's opposition to the Motion
that she has abandoned her first claim for relief.   She
presents no argument or facts supporting the existence of
any element of a breach of a covenant of good faith and
fair dealing in her opposition.   See Shakur v. Schriro,
514 F.3d 878, 892 (9th Cir. 2008) (citing Jenkins v.
Cnty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir.
2005) (finding that plaintiff abandoned "two claims by
not raising them in opposition to the County's motion for
summary judgment").   The failure of Plaintiff to offer

1  any argument or evidence in opposition to Hyatt's Motion

2  on this claim constitutes abandonment of the claim, and

3  summary judgment is properly entered in Hyatt's favor

4  with respect to Plaintiff's first claim for relief.  <u>See</u>

5  <u>Deirmenjian v. Deutsche Bank, A.G.</u>, CV 06-00774, 2010 WL

6  3034060, at *7 (C.D. Cal. July 30, 2010).

7

8                          **IV. CONCLUSION**

9

10      For the foregoing reasons, the Court GRANTS

11  Defendant's motion for summary judgment on all five of

12  Plaintiff's claims for relief.

13

14

15       May 13, 2013

16  Dated: _____        _____
                                    Jesus G. Bernal
17                                 United States District Judge

18

19

20

21

22

23

24

25

26

27

28